Peter J. Farnese (SBN 251204)
pjf@farneselaw.com
**FARNESE P.C.**
700 Flower St., Suite 1000
Los Angeles, CA 90017
(310) 356-4668

Ruben Honik (*Pro hac vice*)
ruben@honiklaw.com
David J. Stanoch (*Pro hac vice*)
david@honiklaw.com
**HONIK LLC**
1515 Market St., Suite 1100
Philadelphia, PA 19102
(267) 435-1300

*Counsel for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORIANN SLATTERY, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>            v.<br><br>ATHENA COSMETICS, INC.<br><br>      Defendants. | Case No. 2:23-cv-10078-HDV-AJR<br><br>Judge: Hon. Hernán D. Vera<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: May 30, 2024<br>Hearing Time: 10:00 a.m.<br>Courtroom 5B<br><br>Trial Date: n/a |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................2

III.    LEGAL STANDARD .............................................................................................4

IV.     ARGUMENT ..........................................................................................................5

      A.     Plaintiff's Claims Are Not Impliedly Preempted ........................................5

      B.     Plaintiff Sufficiently Pleads Breach of Warranty Claims (Counts IV & V) .......8

      C.     Plaintiff Sufficiently Pleads Statutory Consumer Fraud Claim (Count I) ..........9

      D.     Plaintiff's Unjust Enrichment Claim (Count VII) Is Not Barred as 'Duplicative' ...................................................................................................11

      E.     The Economic Loss Doctrine Does Not Bar Plaintiff's Negligent Misrepresentation (Count III) and Negligence (Count VI) Claims ..................12

      F.     Plaintiff Adequately Pleads Her Fraud Claim (Count II) ................................13

V.      CONCLUSION .....................................................................................................14

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adams v. Carnival Corp.*
482 F. Supp. 3d 125 (S.D. Fla. 2020) ................................................................... 13

*Alhassid v. Nationstar Mortg. LLC*
771 Fed. Appx. 965 (11th Cir. May 8, 2019) ....................................................... 10

*Battle v. Taylor James, LLC*
607 F. Supp. 3d 1025 (C.D. Cal. 2022) ............................................................... 11

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................................... 4

*Buckman Co. v. Plaintiffs' Legal Comm.*
531 U.S. 341 (2001) ............................................................................................... 5

*Carson v. Monsanto Co.*
92 F.4th 980 (11th Cir. 2024) ................................................................................ 6

*Chaverri v. Platinum LED Lights LLC*
CV-21-01700-PHX-SPL, 2022 WL 2275664 (D. Ariz. June 22, 2022) ............... 14

*Corbett v. PharmaCare U.S., Inc.*
567 F. Supp. 3d 1172 (S.D. Cal. 2021) ................................................................. 6

*Corpuz v. Walmart, Inc.*
No. 22-cv-0901, 2023 WL 5154509 (S.D. Cal. Aug. 10, 2023) ............................ 9

*Debernardis v. IQ Formulations, LLC*
942 F.3d 1076 (11th Cir. 2019) ............................................................................. 7

*Durnford v. MusclePharm Corp.*
907 F.3d 595 (9th Cir. 2018) ................................................................................. 5

*Gegas v. St. Matthew's Univ. Sch. of Med.*
No. 22-cv-2299, 2023 WL 6294211 (M.D. Fla. Aug. 25, 2023) .......................... 10

*Gibson v. Lynn Univ., Inc.*

504 F. Supp. 3d 1335 (S.D. Fla. 2020). ............................................................................ 11

*Gov't Employees Ins. Co. v. Glassco Inc.*
No. 19-cv-1950, 2021 WL 4391717 (M.D. Fla. Sept. 24, 2021) ........................................ 12

*Hilliard v. Black*
125 F. Supp. 2d 1071 (S.D. Fla. 2000). ............................................................................ 13

*In re Checking Account Overdraft Litig.*
307 F.R.D. 656 (S.D. Fla. 2015)................................................................................... 11-12

*In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*
No. 23-cv-0818, 2023 WL 7531230 (N.D. Ill. Nov. 13, 2023)............................................. 9

*In re Takata Airbag Prods. Liab. Litig.*
MDL No. 2599, 2016 WL 5844872 (S.D. Fla. June 20, 2016) .................................... 10, 14

*In re Target Corp. Data Sec. Breach Litig.*
66 F. Supp. 3d 1154 (D. Minn. 2014).............................................................................. 13

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*
534 F. Supp. 3d 1067 (N.D. Cal. 2021)............................................................................ 11

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*
MDL No. 2875, 2021 WL 307486 (D.N.J. Jan. 29, 2021)................................................. 14

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*
MDL No. 2875, 2021 WL 364663 (D.N.J. Feb 3, 2021) ................................................... 13

*Lazy Y Ranch Ltd. v. Behrens*
546 F.3d 580 (9th Cir. 2008) .......................................................................................... 4

*Leon v. Continental AG*
301 F. Supp. 3d 1203 (S.D. Fla. 2017)............................................................................. 11

*Longest v. Green Tree Servicing LLC*
74 F. Supp. 3d 1289 (C.D. Cal. 2015)............................................................................. 11

*Melendres v. Arpaio*
784 F.3d 1254 (9th Cir. 2015)......................................................................................... 11

*Mendiondo v. Centinela Hosp. Med. Ctr.*
521 F.3d 1097 (9th Cir. 2008). ........................................................................ 4

*Mendoza v. Procter & Gamble Co.*
-- F. Supp. 3d --, 2023 WL 8860900 (C.D. Cal. Dec. 20, 2023) ........................................... 6

*Moore v. Kayport Package Exp., Inc.*
885 F.2d 531 (9th Cir. 1989) ............................................................................. 5

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001). ............................................................................ 4

*Nexus Pharms. Inc. v. Cent. Admixture Pharm. Servs.*
48 F.4th 1040 (9th Cir. 2022) ........................................................................... 7

*Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*
No. 23-cv-1503, 2023 WL 7385819 (M.D. Fla. Nov. 8, 2023) ............................................ 7

*Odom v. Microsoft Corp.*
486 F.3d 541 (9th Cir. 2007) ........................................................................... 14

*Perez v. Nidek*
711 F.3d 1109 (9th Cir. 2013) ........................................................................... 7

*Rife v. Newell Brands, Inc.*
632 F. Supp. 3d 1276 (S.D. Fla. 2022) ................................................................. 12

*Sager v. Blanco*
351 So.3d 1129 (Fla. 3d DCA 2022) .................................................................... 11

*Smith v. Wm. Wrigley Jr. Co.*
663 F. Supp. 2d 1336 (S.D. Fla. 2009) .................................................................. 9

*Stengel v. Medtronic, Inc.*
704 F.3d 1224 (9th Cir. 2013) ......................................................................... 5-6

*Tappana v. Am. Honda Motor Co., Inc.*
609 F. Supp. 3d 1078 (C.D. Cal. 2022) ............................................................... 13-14

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*
110 So.3d 399 (Fla. 2013) ................................................................................... 12

*Trazo v. Nestle USA, Inc.*
No. 5:12-CV-2272, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)....................................... 7

*Valiente v. Unilever United States, Inc.*
No. 22-21507, 2022 WL 18587887 (S.D. Fla. Dec. 8, 2022) ........................................ 9, 11

*Vess v. Ciba-Geigy Corp USA*
317 F.3d 1097 (9th Cir. 2003) ..................................................................... 5, 13

*Wilson v. Colourpop Cosmetics, LLC*
No. 22-cv-5198, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023)............................................ 7

*Wyeth v. Levine*
555 U.S. 555 (2009) ................................................................................... 5

*Yonan v. Walmart, Inc.*
591 F. Supp. 3d 1291 (S.D. Fla. 2022)................................................................ 10

## **Rules**

Fed. R. Civ. P. 8(d)................................................................................... 10

Fed. R. Civ. P. 9(b)................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................ *passim*

Plaintiff, Doriann Slattery, respectfully files this memorandum of law in opposition to Defendant Athena Cosmetics, Inc.'s ("Athena") Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 21) (the "Motion to Dismiss").[1]

## I.   **INTRODUCTION**

This putative consumer class action involves the sale of beauty products sold with undisclosed safety risks. Athena manufactures and sells Serums (as defined *infra*) to promote eye lash and brow growth. Athena generally markets the Serums as "safe" products that only contain benign, natural substances. This is untrue. The Serums actually contain a substance called dechloro dihydroxy difluoro ethylcloprostenolamide ("DDDE"). DDDE is a synthetic prostaglandin, a hormone-like substance that affects bodily functions and can make eye lashes and brows grow longer, thicker, and darker. However, DDDE has safety risks which are well-recognized in the scientific and medical communities. Athena failed to warn consumers that its Serums pose serious risks to users. None of Athena's labeling, packaging, instructions for use, or promotional materials discloses the risk of using DDDE on or around the eyes.

The failure to disclose adverse effects and safety risks associated with Athena's Serums constitutes a violation of consumer protection laws (Count I), fraud by misrepresentation and omission (Count II), negligent misrepresentation (Count III), breach of express and implied warranties (Counts IV & V), negligence (Count VI), and unjust enrichment (Count VII). Athena's motion to dismiss argues implied preemption and makes a variety of sufficiency-of-pleadings arguments as to each Count. These arguments lack merit and do not warrant dismissal.

Assuming it is even procedurally proper for Athena to raise the affirmative defense of implied preemption through a Rule 12(b)(6) motion, Plaintiff's claims are not impliedly preempted by federal law. Plaintiff's claims arise under independent, parallel state law duties

---

[1] Plaintiff notes there are nearly identical cases against Athena pending in the Northern District of Illinois and the Eastern District of New York. *See Markoff v. Athena Cosmetics, Inc.*, 23-cv-16401 (N.D. Ill.); *Rush v. Athena Cosmetics, Inc.*, 23-cv-8799 (E.D.N.Y). Motion to dismiss briefing is completed already in the *Markoff* matter.

that do not conflict with any federal obligation.  Athena also has deliberately chosen *not* to seek FDA approval to sell its Serums as "drugs." It sells them as non-FDA approved consumer products.  Federal law cannot impliedly preempt state law claims where, as here, federal drug regulations do not even apply.  Athena also misconstrues Plaintiff's claims. Plaintiff does not seek to have the Serums defined as "drugs" and regulated as such under federal law.  Rather, given Athena's choice to *not* characterize its Serums as drugs, and even in the absence of federal drug regulation, Athena still must comply with independent state law duties not to misrepresent the nature of its Serums and to affirmatively warn consumers about its products' dangers.

Athena's remaining sufficiency-of-pleadings arguments miss the mark.  The Complaint's allegations spell out 'the who, what, when, where, why, and how' sufficiently to apprise Athena of the asserted claims under Rule 8 or 9(b) of the Federal Rules of Civil Procedure.

For these reasons, discussed more fully below, Athena's motion should be denied.

## II.   FACTUAL BACKGROUND

Athena manufactures and sells consumer beauty products.  (Compl. ¶ 2, Dkt. 1) (the "Complaint").  Among the products are RevitaLash Advanced Eye Serum, RevitaBrow Advanced Serum, RevitaLash Advanced Pro, and RevitaLash Advanced Sensitive (the "Serums" or "Products").  (*Id.*).  Athena markets the Serums to 'enhance' eyelashes and eyebrows.  (*Id.* ¶ 11).  Athena markets the Serums as safe-to-use products that only contains benign, natural substances, such as "green tea" and "ginseng."  (*Id.* ¶¶ 33-34).

In reality, the Serums contain a harmful substance called dechloro dihydroxy difluoro ethylcloprostenolamide or DDDE. (*Id.* ¶ 3). DDDE is a prostaglandin analog that can promote hair and lash growth – the main advertised purpose of Athena's Serums.  (*Id.*). This substance is responsible for the hair growth effect of the Serums, not other benign substances also contained in the Serums, such as ginseng.  (*Id.* ¶ 4).  DDDE is widely known and understood in the scientific literature and by the medical community to pose a number of serious safety

risks. (*Id.* ¶ 30). For instance, the European Commission's Scientific Committee on Consumer Safety recently stated that it was *not* able to conclude that DDDE is safe when used in cosmetic products intended for use in the proximity of the human eyes. (*Id.* ¶ 31). Similarly, the United States Food and Drug Administration ("FDA") has found that another prostaglandin analog (in the same substance class as DDDE) may cause various effects to the eye including, but not limited to, ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy. (*Id.* ¶ 30).

Athena does not disclose any of DDDE's risks and harmful effects. (*See, e.g.*, Compl. ¶¶ 2, 7, 11-12, 22-23, 41, 43-44, 46, 48). To the contrary, the Serums' labeling, packaging, and instructions, as well as Athena's other marketing and promotional material such as its own website and those of Athena's authorized resellers, omits any mention of DDDE's risks and harmful effects. (*Id.* ¶¶ 7, 15-16, 23). Instead, Athena misleadingly touts the safety and efficacy of the Serums, without disclosing any of the known risks of DDDE. (*See, e.g.*, *id.* ¶¶ 2, 22, 41, 48).

As the manufacturer and seller, Athena clearly knew its own Products contained DDDE. Further, Athena cannot deny it was aware of the serious safety risks posed by DDDE. Aside from safety information dating back many years, Athena affirmatively petitioned a European body to declare that Athena's Serums were "safe," but the body refused to do so because of the presence of DDDE in Athena's Serums. (*See, e.g.*, *id.* ¶¶ 26-27, 30-32). Further, customer feedback about Athena's Serums reveal numerous reports of consumers experiencing the very harmful effects known to be associated with DDDE use. (*Id.* ¶ 47). Were this not enough, until very recently, Athena's website deliberately omitted mention of *any* harmful effects whatsoever associated with its Serums. (*Id.* ¶ 48). Athena's website now downplays any safety risks, falsely claiming that the cause of reported harmful effects "is not known" or might be due to "some unspecified allergic reaction." (*Id.*). Athena still fails to clearly warn consumers about the serious adverse effects associated with DDDE use. (*Id.*).

Plaintiff Doriann Slattery and the other putative class members are consumers who purchased Athena's Serums. (*Id.* ¶¶ 13, 15-16). Each was duped by Athena's uniformly fraudulent misrepresentations and omissions about the Serums, *viz.*, the non-disclosure of DDDE's risks. (*Id.* ¶ 14). These misrepresentations and omissions were material to purchasers such as Plaintiff and other class members. (*Id.* ¶¶ 44-46, 50). They either would have not purchased the Serums had they known the truth, or certainly would have paid less for them. (*Id.* ¶ 51). Plaintiff commenced this action on November 30, 2023. Although Plaintiff did suffer physical impact from her use of the Serums (*id.* ¶¶ 17, 76, 89, 103, 117, 131, 140, 147), she seeks only economic damages and injunctive relief under various state law theories on behalf of a putative class of similarly situated purchasers. (*Id.* ¶¶ 67-148 & Wherefore Clause).

Notably, a permanent injunction entered in this District remains in effect to this day, prohibiting Athena from selling its Serums in California due to the presence of prostaglandin analogs in Athena's Serums. (*Id.* ¶¶ 9, 56).

## III.    LEGAL STANDARD

A motion to dismiss under Federal Rule 12(b)(6) tests only the legal sufficiency of the complaint, not the ultimate merits of the plaintiff's claims. *See, e.g.*, *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See, e.g.*, *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A complaint will survive dismissal under Rule 12(b)(6) as long as it contains sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face" and "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Ultimately, dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Fraud-based claims must comply with Federal Rule 9(b), which requires that the plaintiff "identify the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Accordingly, a plaintiff should allege "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1104 (9th Cir. 2003); *see* Fed. R. Civ. P. 9(b).

## IV.    ARGUMENT

### A. Plaintiff's Claims Are Not Impliedly Preempted.

Preemption is an affirmative defense for which Athena bears the burden. *See, e.g.*, *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018). There is also a presumption against preemption. *See, e.g.*, *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (en banc). Athena cannot meet its burden for two reasons: (i) Plaintiff's Complaint does not allege Athena violated any federal law or duty, but rather independent, non-conflicting state law duties; and (ii) Athena provides no evidence that Congress sought to supplant private remedies widely available to consumers through state law to prosecute unlawful practices by sellers of non-drug products, *see Wyeth v. Levine*, 555 U.S. 555, 578 (2009).

Relying on *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), Athena argues that it would "conflict" with federal law to hold Athena liable under independent, parallel state law duties. (Mot. to Dismiss at 6-7). *Buckman*, however, involved "fraud-on-the-FDA" claims, *see* 531 U.S. at 348, which are not alleged here. Further, under *Buckman*, no preemptive effect exists when a consumer, such as Plaintiff here, alleges state law claims based on independent, even parallel, state law duties. *Id*. at 348, 353.

Plaintiff's claims are not based on any violation of FDA regulation. Nowhere does Plaintiff seek to enforce federal law. Rather, the Complaint exclusively alleges breaches of state law duties. (Compl. ¶¶ 14, 67-148).

Plaintiff does not seek to enforce federal law, nor impose any labeling or marketing requirements that are different from, or in addition to, any Food, Drug, and Cosmetic Act requirement applicable to Athena's products.  In fact, a key point of Plaintiff's independent state law claims is that FDA drug regulations *are not* applicable to Athena's products because the Serums are sold over the counter, directly to consumers without a prescription.  Athena deliberately chose *not* to market its Serums as "drugs" to avoid FDA scrutiny. (*See, e.g.*, Compl. ¶¶ 10, 33). Athena did not seek FDA approval for its Serums, thereby circumventing the FDA's rigorous safety and efficacy criteria and avoiding FDA regulation for new drug approval.  Thus, Athena cannot now assert that the same drug regulations that *do not* apply to its Serums apply to this case and preempt Plaintiff's claims.  Athena cannot have it both ways.  *See, e.g.*, *Carson v. Monsanto Co.*, 92 F.4th 980, 997 (11th Cir. 2024) (reversing dismissal on implied preemption where defendant never asked agency to consider warning at issue).

Athena misconstrues the Complaint in arguing that Plaintiff wants Athena's Serums to be regulated as "drugs."  (Mot. to Dismiss at 9-10).  This is simply not the case.  The Complaint alleges that Athena's Serums contain a substance that causes serious side effects that should have been disclosed to consumers who purchased them over-the-counter. Plaintiff's claims are not based on the Serums' status with the FDA.  Rather, Plaintiff asserts that Athena failed to warn her and the putative class about the dangers of its products.  (*See, e.g.*, Compl.  ¶¶ 2, 7, 11-12, 15-16, 22-23, 41, 43-44, 46, 48).  Thus, Athena's failure to seek drug approval from the FDA is not the basis for Plaintiff's claims.  (*See, e.g.*, *id.* ¶ 41).

Numerous courts in this Circuit and others have held that similar state law claims, involving the fraudulent marketing and labeling of consumer products, cosmetics, and even much more strictly regulated products such as drugs and medical devices, are not impliedly preempted.  *See, e.g.*, *Stengel*, 704 F.3d at 1233 (medical device); *Mendoza v. Procter & Gamble Co.*, -- F. Supp. 3d --, 2023 WL 8860900, at *3 (C.D. Cal. Dec. 20, 2023) (drugs); *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1193 (S.D. Cal. 2021) (dietary

product); *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272, 2013 WL 4083218, at \*7 (N.D. Cal. Aug. 9, 2013) (food).

Athena's trio of cases (*see* Mot. to Dismiss at 6-9) are inapposite. Two of them involved drug manufacturers claiming their rivals engaged in unfair competition by selling copycat drugs without FDA approval. *See Nexus Pharms. Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040, 1044 (9th Cir. 2022); *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, No. 23-cv-1503, 2023 WL 7385819 (M.D. Fla. Nov. 8, 2023). Plaintiff is not a drug manufacturer arguing that a rival's product is an unapproved "drug" which should be regulated by the FDA. Rather, the entire point of Plaintiff's Complaint is that Athena is *not* marketing its Serums as drugs, but as regular consumer products. Thus, Athena had a duty to warn consumers directly of the dangers of its Serums. Unlike the competitor-plaintiffs in *Nexus* and *Novo Nordisk* who solely sought to have competitors' products classified as unapproved "drugs" under federal law, Plaintiff pleads independent, state law duties that do not stem from federal regulations. *See, e.g.*, *Perez v. Nidek*, 711 F.3d 1109, 1120 (9th Cir. 2013) (for implied preemption to apply, plaintiff's claims must "exist only because of the FDCA's requirements"); *see also, e.g.*, *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084-85 (11th Cir. 2019) (allowing plaintiff to pursue Florida law claims for economic injuries flowing from purchases of allegedly mislabeled dietary supplements).

The court in the third case cited by Athena did not reach preemption at all, but rather found the plaintiff lacked Article III standing, for lack of injury-in-fact, because *inter alia* (i) her allegations that a product was unsafe were merely "speculative" and "conclusory," (ii) she did not allege that she suffered any physical impact from using the product, and (iii) she did not adequately allege a failure to disclose. *Wilson v. Colourpop Cosmetics, LLC*, No. 22-cv-5198, 2023 WL 6787986, at \*5 (N.D. Cal. Sept. 7, 2023). By contrast, Plaintiff thoroughly and plausibly alleges that Athena's Serums with DDDE pose serious safety risks (*see e.g.*, Compl. ¶ 11-12, 24-26, 30-32), that she did suffer physical effects (*id.* ¶¶ 17, 76, 89, 103, 117, 131, 140, 147), and that Athena failed to warn her about the risks of using its Serums in

the product's labeling, packaging, and instructions, as well as related marketing materials (*see, e.g., id.* ¶¶ 2, 7, 11-12, 15-16, 22-23, 41, 43-44, 46, 48). Athena's desire to explain away Plaintiff's well-pleaded references to public bodies and scientific literature cataloguing DDDE's serious risks (*see* Mot. to Dismiss at 11) is an improper invitation to this Court to make factual inferences and evidentiary-weigh determinations in Athena's favor.

### B. Plaintiff Sufficiently Pleads Breach of Warranty Claims (Counts IV & V).

Athena seeks to dismiss the breach of express warranty (Count IV) and breach of implied warranty (Count V) claims due to the Complaint's purported failure to sufficiently identify promises or affirmations, or to "plausibly allege[] any safety hazards or risks" associated with DDDE. (*See* Mot to Dismiss at 11-13). Both arguments fail.

First, the Complaint is not "vague" as to express affirmations or promises. (*Id.* at 11). It is quite explicit. The Complaint alleges in no uncertain terms that the Serums' labeling, packaging, and instructions constitute express promises that the products were safe, contain benign substances, and will improve the health and appearance of consumers' eyelashes and eyebrows. (*See, e.g.,* Compl. ¶¶ 15-16, 23, 31, 34, 37-38, 48, 106-110, 120-124). Athena, in its own Motion to Dismiss, quotes a number of specific examples directly from Plaintiff's Complaint which exemplify the promises it made to consumers about its products. (*See* Mot. to Dismiss at 12). It should be noted that under Florida law,[2] "an express warranty need not be by words, but can be by conduct as well, such as, the showing of a blueprint or other description of the goods sold to the buyer." *Miles v. Kavanaugh*, 350 So.2d 1090, 1093 (Fla. 3d DCA 1977). Thus, the Complaint here sufficiently pleads the warranties at issue.

The Complaint also alleges that Athena's Serums containing DDDE, "are known to cause serious adverse effects to the eye and the structure around the eye, including but not limited to blepharitis, Meibomian Gland Dysfunction, chronic dry eye, redness, discoloration, pain or irritation, and other serious side effects." (Compl. ¶ 4). This rendered Athena's

---

[2] Athena appears to argue that the law of Plaintiff's home state, Florida, applies to her claims. Plaintiff therefore focuses on Florida law in opposing Athena's arguments.

statements about its Serums untrue. The Complaint alleges these false statements accompanied every Serum sold to consumers, including Plaintiff. (*Id.* ¶¶ 15-16, 23, 31, 34, 37, 38, 48, 106-110, 120-124). It also alleges specific statements on Athena's website which misrepresent the safety profile of the Serums, and materially omit any mention of DDDE and/or its risks. (*See, e.g., id.* ¶¶ 16, 34, 48). These representations are a factual description of the Serums' contents, qualities, and attributes and thus an "affirmation of fact or promise" about the safety of the Serums. Indeed, Florida courts and others (especially at the pleadings stage) that product labeling, packaging, and instructions constitute warranties. *See, e.g., Valiente v. Unilever United States, Inc.*, No. 22-21507, 2022 WL 18587887, at *15 (S.D. Fla. Dec. 8, 2022) (permitting warranty claims based on consumer product labeling); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2009) (same, as to food); *see also, e.g., In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 23-cv-0818, 2023 WL 7531230, at *7-8 (N.D. Ill. Nov. 13, 2023) (same, as to cosmetics); *Corpuz v. Walmart, Inc.*, No. 22-cv-0901, 2023 WL 5154509, at *9 (S.D. Cal. Aug. 10, 2023) (same, as to dietary supplement).

Athena's obtuse contention that the Complaint does not "allege[] any safety hazards or risks associated with" DDDE (Mot. to Dismiss at 13) simply lacks merit. The Complaint explains what DDDE is (Compl. ¶ 3), what DDDE's effects and risks are (*id.* ¶¶ 4-6, 24-26) as widely recognized in the scientific literature and by regulatory bodies (*id.* ¶¶ 30-31), and that Athena's failure to disclose these material risks rendered the Serums unmerchantable and not fit for intended purpose (*id.* ¶¶ 113, 127).

**C. Plaintiff Sufficiently Pleads Statutory Consumer Fraud Claim (Count I).**

Contrary to Athena's assertions (Mot. to Dismiss at 13), the Complaint adequately pleads violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and other states' consumer protection laws. Far from "threadbare recitals," (*id.*), the Complaint specifically alleges the statutes at issue (Compl. ¶ 68), and all the elements under those statutes. For instance, the Complaint alleges that Athena's conduct affected trade or

commerce (*id.* ¶ 69); that Plaintiff and other putative class members are 'consumers' or 'persons' within the meaning of the applicable statutes (*id.* ¶ 70); that Athena's conduct as detailed in Part IV of the Complaint offends public policy and caused injury to Plaintiff and the putative class (*id.* ¶ 71); that Athena's conduct is unfair, deceptive, and misleading (*id.* ¶ 72) because Athena represented the Serums were safe when in reality there are serious adverse effects associated with prostaglandin/DDDE use in lash serums (*id.* ¶¶ 72-74); that to the extent reliance is even pertinent Athena knew or certainly should have known its wrongful conduct induced reliance (*id.* ¶ 72); that Athena's unlawful conduct was deliberate and knowing insofar as it intentionally made false statements and omissions about the Serums' contents and safety (*id.* ¶ 72-73) which were material (*id.* ¶ 74); that as a direct and proximate result of Athena's conduct Plaintiff and other class members suffered actual damages (*id.* ¶ 75); and that Plaintiff satisfied any pre-suit notice/demand requirement (*id.* ¶ 77).

These allegations more than suffice under Rule 8 (or Rule 9(b), if it applied). *See, e.g., Gegas v. St. Matthew's Univ. Sch. of Med.*, No. 22-cv-2299, 2023 WL 6294211, at *6 (M.D. Fla. Aug. 25, 2023) ("A plaintiff need not plead an FDUPTA claim under the heightened pleading standing," and finding FDUTPA allegations satisfied Rule 8); *In re Takata Airbag Prods. Liab. Litig.*, MDL No. 2599, 2016 WL5844872, at *3 (S.D. Fla. June 20, 2016); *see also Alhassid v. Nationstar Mortg. LLC*, 771 Fed. Appx. 965, 969-70 (11th Cir. May 8, 2019) (reversing dismissal of FDUPTA claim under Rule 8). Further, courts typically do not dismiss consumer protection law claims at the Rule 12(b)(6) stage because such claims can be fact-intensive. *See, e.g., Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1304 (S.D. Fla. 2022).

Athena's related contention that Plaintiff lacks Article III standing to assert claims under other states' laws (Mot. to Dismiss at 13-14) misconstrues the Complaint. Plaintiff is not asserting claims under other states' laws *on her own behalf*; rather she is simply seeking to represent a putative class that includes non-Florida class members who purchased the same Serums and thus have the same claims as Plaintiff under their respective states' consumer

protection laws. At bottom, Athena's challenge to non-Florida claims is a premature attempt to challenge Plaintiff's class allegations.[3] Numerous courts have rejected these types of challenges and allowed plaintiffs to plead claims on behalf of non-resident class members, because such issues are best left for the class certification stage. *See, e.g., Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (adopting "class certification approach" that addresses multi-state laws at class certification); *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1041-42 (C.D. Cal. 2022) (same); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1125 (N.D. Cal. 2021) (same); *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1222 (S.D. Fla. 2017) (same). Additionally, Athena would bear the burden of proffering a choice-of-law analysis at this stage, which it completely fails to do.

## D. Plaintiff's Unjust Enrichment Claim (Count VII) Is Not Barred as 'Duplicative'.

Athena's terse argument against unjust enrichment boils down to Athena's belief that such claims cannot proceed if they are based on the same conduct as other claims. (*See* Mot. to Dismiss at 15). Not so. As a matter of substantive law, Florida recognizes unjust enrichment as an independent cause of action. *See, e.g., Valiente*, 2022 WL 18587887, at *21; *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1337 (S.D. Fla. 2020). As a matter of federal procedural law, a plaintiff may plead unjust enrichment in the alternative to other claims. *See* Fed. R. Civ. P. 8(d); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289 (C.D. Cal. 2015) (allowing plaintiff to plead unjust enrichment under Florida law in the alternative); *see also Sager v. Blanco*, 351 So.3d 1129, 1136 (Fla. 3d DCA 2022) (same, under Florida law).

Further, Athena is incorrect that Plaintiff's unjust enrichment claim is "entirely duplicative" of her other claims. (Mot. to Dismiss at 15). Plaintiff's unjust enrichment claim focuses on Athena's ill-gotten gains, whereas Plaintiff's common law tort theories focus on Plaintiff's and the putative class's losses. *See, e.g., In re Checking Account Overdraft Litig.*,

---

[3] As the Complaint alleges, at the class certification stage, Plaintiff will seek certification under states' laws that are substantially similar to, and do not conflict with, Florida law. Compl. ¶ 67.

307 F.R.D. 656, (S.D. Fla. 2015) (certifying muti-state classes' unjust enrichment claims). These distinctions are divergent enough to also amount to an alternative theory under Rule 8, were Athena even correct that such is required (and it is not).

### E. The Economic Loss Doctrine Does Not Bar Plaintiff's Negligent Misrepresentation (Count III) and Negligence (Count VI) Claims.

Contrary to Athena's assertion (Mot. to Dismiss at 16), the economic loss doctrine does not bar Counts III and VI for at least four reasons.

First, the doctrine only applies when the alleged negligence or fraud relates to the performance of a contract, and no contract claim is alleged here. *See, e.g.*, *Gov't Employees Ins. Co. v. Glassco Inc.*, No. 19-cv-1950, 2021 WL 4391717, at *17-18 (M.D. Fla. Sept. 24, 2021) (collecting cases).

Second, in Florida, the economic loss doctrine does not extend outside products liability actions. *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So.3d 399, 407 (Fla. 2013) ("we now take this final step and hold that the economic loss rule applies only in the product liability context. We thus recede from our prior rulings to the extent that they have applied the economic loss rule to cases other than products liability."). This is not a products liability case; Plaintiff does not allege any products liability claims (e.g., defective design, etc.).

Third, while Plaintiff does not seek damages for physical harm, she alleges it. (*See, e.g.*, Compl. (*id.* ¶¶ 17, 76, 89, 103, 117, 131, 140, 147). These allegations distinguish the Complaint here from those in the cases cited by Athena (*see* Mot. to Dismiss at 16), some of which also arose in the products liability context. *See Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1306 (S.D. Fla. 2022).

Fourth, numerous fact-based exceptions to the doctrine exist, including but not limited to the existence of an independent duty; a matter of public safety; the existence of a special relationship; and special circumstances which require reallocation of risk, such as where the loss was caused, *e.g.*, by negligent misrepresentations by a defendant who supplied

information for the guidance of others. *See, e.g.*, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1173 (D. Minn. 2014) (collecting states and cases); *Hilliard v. Black*, 125 F. Supp. 2d 1071, 1081 (S.D. Fla. 2000). Each of these questions turns on intensive factual determinations which make dismissal premature at the 12(b)(6) stage. *See, e.g.*, *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 19-md-2875, 2021 WL 364663, at *22 (D.N.J. Feb. 3, 2021) (collecting cases declining to rule on "fact-intensive" economic loss issues on the pleadings).

### F. Plaintiff Adequately Pleads Her Fraud Claim (Count II).

Rule 9(b) requires a plaintiff to plead the essential factual background, or the who, what, when, where, and how, of the fraud. *See, e.g.*, *Vess*, 317 F.3d at 1106. Rule 9(b)'s heightened standard is relaxed somewhat in a case based on a fraudulent omission, rather than one based on misrepresentation; when specific information is in the defendant's control; and when pleading a defendant's state of mind. *See, e.g.*, *Tappana v. Am. Honda Motor Co., Inc.*, 609 F. Supp. 3d 1078, 1088 (C.D. Cal. 2022); *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1264 (S.D. Fla. 2020).

The Complaint adequately alleges the elements of Count II with the requisite particularity. Plaintiff alleges that: (i) Athena (the "who"), (*see, e.g.*, Compl. ¶¶ 2, 18); (ii) failed to disclose the serious risks associated with DDDE (the "what"), (*see, e.g.*, *id.* ¶¶ 2, 7, 11, 15-16, 23, 43-45, 49-50); (iii) but nevertheless Athena sold its Serums to Plaintiff and other class members throughout the United States including through promotion on its own website and the websites of Athena's authorized resellers (the "where"), (*see, e.g.*, *id.* ¶¶ 15-16, 57); (iv) since at least July 2022 in Plaintiff's case and likely earlier, through the present (the "when"), (*see, e.g.*, *id.* ¶ 15); (v) for the purpose of duping consumers into paying for Serums that carried undisclosed risks to deceptively boost Athena's own profits (the "how" and "why"), (*see, e.g.*, *id.* ¶¶ 8, 148). The Complaint also explains in detail what DDDE is, why it is dangerous, and how Athena knew or most certainly should have known about all of this, as explained *supra*. Moreover, the Complaint alleges specific facts and circumstances—

such as Athena's deceptive language on its website (*id.* ¶ 48), its marketing focusing *only* on inert ingredients such as "Ginseng" (an herbal root) and "Swertia Japonica" (a flower) (*id.* ¶ 34)   and the countless public consumer comments about concerns over the Serums' safety (*id.* ¶ 47)—that create a strong inference of Athena's fraudulent intent (*id.* ¶¶ 40, 88, 102). These allegations are more than sufficient to put Athena on notice of the who, what, when, where, why, and how, and therefore easily satisfy Rule 9(b).  *See, e.g., Tappana*, 609 F. Supp. 3d at 1088 (finding fraud allegations similar to those here sufficient under California and Florida law); *Chaverri v. Platinum LED Lights LLC*, CV-21-01700-PHX-SPL, 2022 WL 2275664, at *10-11 (D. Ariz. June 22, 2022) (references to defendant's website and allegations that defendant marketed product through false statements that "are material and influence purchasing decisions" sufficient to plead fraud under Florida law); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2021 WL 307486, at *11-13 (D.N.J. Jan. 29, 2021) (finding that plaintiffs adequately pleaded all "fraud-based" claims under Rule 9(b), including under Florida law); *see also In re Takata*, 2020 WL 3286821, at *5-6 (finding similar allegations as to failure to disclose facts sufficient to proceed).

Last, contrary to Athena's suggestion (Mot. to Dismiss at 17), Plaintiff may allege "general rather than particularized allegations" of Athena's state of mind, *see, e.g.*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007), which she amply does.  (*See, e.g.*, Compl. ¶¶ 40, 47, 48, 88, 102).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

DATED: May 8, 2024          FARNESE P.C.

By:    */s/Peter J. Farnese*
Peter J. Farnese

HONIK LLC
Ruben Honik (*Pro hac vice*)
ruben@honiklaw.com
David J. Stanoch (*Pro hac vice*)
david@honiklaw.com
1515 Market St., Suite 1100
Philadelphia, PA 19102
(267) 435-1300


*Attorneys for Plaintiff
and the Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the email addresses registered in the CM/ECF system.

*/s/ Peter J. Farnese*
Peter J. Farnese